**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 20 2013, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**J. DIRK CARNAHAN**
Vincennes, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICKELL BIGGS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  42A04-1208-CR-410 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE KNOX SUPERIOR COURT I
The Honorable W. Timothy Crowley, Judge
Cause No. 42D01-1204-FA-35

**March 20, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, Mickell Biggs challenges the amount and "cash only" nature of his bail, which, after a bail reduction hearing, the trial court set at $15,000. More particularly, Biggs claims that the trial court violated his right to reasonable bail under the Indiana Constitution.[1]

Concluding that the trial court did not err in fixing the amount of Biggs's bail or in requiring that it be fully executed in cash, we affirm the judgment of the trial court.

FACTS

On April 19, 2012, Biggs was charged with two counts of class A felony child molesting. The probable cause affidavit on which the charges were based alleged that on two occasions, Biggs forced his twelve-year-old niece, T.M.A., to engage in sexual activity with him.

On the first occasion, Biggs allegedly made T.M.A. get on the tailgate of his truck and told her to remove her pants, but she refused. After Biggs "grabbed her pants and ripped them down[,]" he fondled her "girl private area" with his finger and "stuck his finger inside of her." Appellant's App. p. 6, 8.

On the second occasion, Biggs allegedly made T.M.A. watch a pornographic movie with him and told her it was "sex education." Id. at 8. Biggs told T.M.A. to take off her pants, and she complied "because she was scared." Id. Biggs then engaged in sexual intercourse with T.M.A. When T.M.A. asked Biggs to stop, "he told her that she would get use[d] to it" and continued for several more minutes. Id.

---

[1] Ind. Const. art. 1, §§ 16, 17.

2

In addition, Biggs allegedly told T.M.A. that "if she told anyone then he would hurt her[,]" that "no one would believe her[,] and that she would get in trouble not him." Appellant's App. p. 6, 8.

The probable cause affidavit also referenced the police interview that was conducted with Biggs. During this interview, Biggs made the following statements:

> [Biggs] stated that he was watching a pornographic movie and [T.M.A.] came in. [Biggs] stated that he had his 1 year old [son] on his chest . . . while watching the movie. [Biggs] advised that he tried to shut the movie off but was not quick enough. [Biggs] advised that [T.M.A.] asked him about the movie and if it was real. [Biggs] stated that he had been masturbating to the movie prior to her walking in. [Biggs] said he had baggy shorts on and had them pulled to the side.

> [Biggs] said that [T.M.A.] sat in front of him on the bed and blocked the way for the remote to shut the TV off. [Biggs] stated that [T.M.A.] pulled her pants down and asked him to do what they were doing on the movie to her. [Biggs] stated that she climbed on top of him and he was trying to get her off of him but couldn't. [Biggs] said that his shorts were bagging and that he had a "woody" and when he rolled over that his penis did go inside her.

Id. at 8-9.

Bail for Biggs was originally set in the amount of $50,000, cash only. At an initial hearing, Biggs was found indigent and appointed defense counsel. On May 1, 2012, Biggs filed an application for release on recognizance or for reduction of his bail. The trial court held a bail reduction hearing on July 25, 2012.

Biggs testified that he was born in Tennessee and that he has some family there, but he has lived in Indiana since he was a baby. Since that time, he has lived "[a]ll over the place" in various southwestern Indiana counties. Tr. p. 4. Prior to his arrest, Biggs

3

lived in an apartment with his wife of five years, their two sons, and his wife's son from a previous relationship. However, Biggs was uncertain if he would be able to return to the apartment if he met bail because they lived in federally assisted housing. Biggs testified that if he could not return home, he would try to stay with a friend who lived close to his family or with his sister in Pike County. However, Biggs stated that he may not be able to stay with his sister because she sometimes watches her two granddaughters.

Biggs quit high school when he was fifteen. Since then, Biggs's main profession has been working on vehicles part-time. Biggs's only full-time employment was in 2008 or 2009 when he worked for a pressure washing company for approximately a year but then quit. Biggs's wife does not work, but "[s]he's trying to get disability because she's got bronchitis and some other stuff." Tr. p. 8.

When asked about how much money he has, Biggs testified, "Right now I've got none." Id. at 11. Biggs owns a 1989 Lincoln, and he claimed that a few people owed him money for work he had performed on their vehicles. Biggs's father and sister had offered to loan him some money, but he did not know how much they would be willing or able to loan him.

Biggs has no criminal history other than "parking tickets or something like that." Tr. p. 7. Biggs also testified that he was aware of the potential penalties but that he would "stay here and face this." Id. at 11. Biggs stated that if his bail was reduced, he would agree to any additional conditions that the trial court wanted to impose.

4

Detective Jonathan Hillenbrand of the Vincennes Police Department testified that the area where Biggs had lived with his family and the area where Biggs's friend lived nearby were both "[v]ery much" populated with children. Id. at 19.

After hearing arguments by Biggs's defense counsel and the State, the trial court stated:

> I understand that the crime is serious and I also understand Mr. Biggs . . . has no criminal history and has significant ties to the community. All those things make this a very difficult decision. I've decided to reduce the bond, but not to the degree that counsel is requesting. Court, having considered all these factors and being duly advised, now determines that Mr. Biggs' bond be reduced to the sum of $15,000 cash only. That might seem like an awful lot of money and it is, in fact, an awful lot of money for Mr. Biggs, I understand that, but it's $35,000 less that it was when he walked in the room. So, that's the best I can do.

Tr. p. 24-25.

This interlocutory appeal ensued.

DISCUSSION AND DECISION

As noted above, Biggs challenges both the reduced amount of his bail and its "cash only" nature. More particularly, Biggs contends that the trial court erred because Biggs has significant ties to the community and no criminal record.

The amount of a defendant's bail rests within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. Perry v. State, 541 N.E.2d 913, 919 (Ind. 1989). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Sneed v. State, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011).

Nevertheless, our constitution guarantees a right to bail in most circumstances and prohibits excessive bail. Ind. Const. art. 1, §§ 16, 17. The right to bail is interrelated with the concept that an accused remains innocent until proven guilty. Hobbs v. Lindsey, 240 Ind. 74, 78, 162 N.E.2d 85, 88 (1959). Accordingly, bail is not intended to punish the defendant in advance of a guilty verdict. Id. Rather, the primary purpose of bail is to ensure the defendant's presence at future court hearings. Id. The bail set for any particular defendant must be based on the specific circumstances of that case. Green v. Petit, 222 Ind. 467, 469, 54 N.E.2d 281, 281 (1944).

Indiana Code section 35-33-8-4(b) provides that the trial court may not set bail in an amount higher than that which is "reasonably required to assure the defendant's appearance in court or to assure the physical safety of another person or the community if the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community." In determining what a reasonable amount of bail is for each defendant, the trial court must consider the following factors as they relate to the defendant's risk of nonappearance:

(1) the length and character of the defendant's residence in the community;

(2) the defendant's employment status and history and his ability to give bail;

(3) the defendant's family ties and relationships;

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;

6

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;

(9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial.

Ind. Code § 35-33-8-4(b).

We initially note that Biggs is not appealing from the initial amount of bail set by the trial court; rather, Biggs is appealing from the reduced amount set by the trial court after he presented evidence on the factors described above. The trial court may reduce a defendant's bail if the defendant "presents additional evidence of substantial mitigating factors . . . , which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial." I.C. § 35-33-8-5(c). However, the trial court may not reduce the defendant's bail if it finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community. Id.

In the instant case, the evidence demonstrates that the trial court weighed what it believed to be the relevant factors under Indiana Code section 35-33-8-4(b) in arriving at its decision. More particularly, the trial court weighed Biggs's "significant ties to the community" and his lack of criminal history with the nature and gravity of the alleged

crimes and the potential penalties for those crimes and determined that $15,000 was an appropriate bail amount based on those factors. Tr. p. 24-25. See Hobbs, 240 Ind. at 79, 162 N.E.2d at 88 (opining that "[a]part from . . . the accused's financial position, the primary fact to be considered in determining an amount which would assure the accused's presence in court is the possible penalty which might be imposed by reason of the offense charged").

In this case, Biggs was charged with two class A felonies for molesting his twelve-year-old niece on two separate occasions. Each class A felony carries with it a potential sentence of twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. Moreover, when considering the circumstances as outlined in the probable cause affidavit, Biggs may also have been subject to a number of possible sentence aggravators. Thus, Biggs may very well be faced with a potential sentence of up to one hundred years of incarceration. In light of this possible sentence, we cannot say that the trial court erred in setting Biggs's bail at $15,000.

Moreover, we find no error with the trial court's decision requiring Biggs to execute his bail with cash. The trial court has several options regarding how it chooses to implement bail, and requiring the defendant to execute bail with cash is one of those options. Ind. Code § 35-33-8-3.2(a).

Nevertheless, Biggs likens the facts of this case to Sneed v. State, 946 N.E.2d 1255 (Ind. Ct. App. 2011), a case in which this Court held that the trial court erred by requiring the defendant to fully execute her bail in cash in the absence of any evidence

8

suggesting she was a flight risk. In <u>Sneed</u>, the defendant was charged with two counts of dealing in methamphetamine as a class A felony, and bail was set at $25,000. 946 N.E.2d at 1256. At a bail reduction hearing, Sneed testified that she had lived in Indiana for more than twenty years, that her three daughters lived with her, and that all of her family and friends lived in Indiana. <u>Id.</u> Although Sneed was unemployed, she had filed for Social Security disability benefits, and a hearing on her petition had been scheduled. <u>Id.</u> Finally, Sneed had two prior substance-abuse related misdemeanor convictions, but she never failed to appear for a hearing and successfully completed probation for both convictions. <u>Id.</u>

Unlike the circumstances in <u>Sneed</u>, however, we note the particular severity of the charges here and the lengthy term of incarceration that could result from Biggs's conviction on those charges. Moreover, the trial court could have reasonably concluded that there was a high risk of Biggs's nonappearance in light of the fact that Biggs did not have his own money to post bail. In short, we conclude that the trial court did not err by requiring Biggs to post his entire $15,000 bail in cash.

The judgment of the trial court is affirmed.

BARNES, J., concurs.

RILEY, J., concurs in part and dissents in part.

# IN THE
# COURT OF APPEALS OF INDIANA

MICKELL BIGGS,                          )
                                        )
    Appellant-Defendant,                )
                                        )
        vs.                            )     No. 42A04-1208-CR-410
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.                 )

**RILEY, Judge, concurring part and dissenting in part**

While I agree with the majority's decision to affirm the trial court's reduced amount of Biggs' bail, I respectfully disagree with the "cash only" nature of the bail bond. By statute, a trial court has several options regarding the manner of executing bail; it may require the defendant to: execute a bail bond with sufficient solvent sureties; deposit cash or securities in an amount equal to the bail; deposit cash or securities in an amount not less than ten percent of the bail, as a court-sponsored bond; execute a bond secured by real estate in the county, with requirements for the tax value of the real estate; post a real estate bond; or perform any combination of the above requirements. Ind. Code § 35-33-8-3.2(a). This statute, like the statute governing the amount of bail,

"also places the manner of executing the bail within the discretion of the trial judge."

*Sneed v. State*, 946 N.E.2d 1255, 1260 (Ind. Ct. App. 2011).

Here, the trial court noted Biggs' lack of criminal history and his significant ties to the community. The record shows that Biggs is unemployed and is without the funds to post a cash only bond. Thus, as in *Sneed*, it is only proper to consider the type of bail set by the trial court. In effect, by denying Biggs the option of a surety bond provided by a bail bondsman, the trial court condemned him to jail pending trial without explicitly ordering him to be held or articulating any reason for doing so. Distinguishing *Sneed*, the majority points to the severity of the charges and the lengthy term of incarceration possibly faced by Biggs. However, like Biggs, Sneed was charged with two Class A felonies and thus, fell within the same sentencing range as Biggs. The majority also references the "high risk of Biggs' nonappearance in light of the fact that Biggs did not have his own money to post bail." (Slip op. p. 9). I believe that this statement ignores the nature of a surety bond provided by a bail bondsman. In *Sneed*, we elaborated that

> A bail bondsman will, in return for a non-refundable fee paid by the defendant, put up his own money with the trial court in the form of a surety, pledging to cover the defendant's bail. Because the bondsman is risking the entire amount if the defendant fails to appear for trial, the bondsman has a powerful incentive to return the defendant to court to face charges. On the other hand, when the defendant is able to deposit the entire amount of the cash bail without the help of a bondsman, it is not very likely anyone will pursue the defendant if he or she decides to skip town prior to trial.

*Id*. at 1260 n. 4.

For these reasons, I conclude that under the facts and circumstances of this case the trial court abused its discretion by requiring a cash only bail.